**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**


J.R. ALLEN                                                    CIVIL ACTION NO.

VERSUS                                                       13-CV-48-SDD-RLB

MC OFFSHORE PETROLEUM, LLC


<u>RULING</u>

This matter is before the Court on the *Motion for Summary Judgment*[1] by Defendant, MC Offshore Petroleum, LLC ("MC Offshore"). Plaintiff J.R. Allen ("Plaintiff") has filed an *Opposition*[2] to which MC Offshore filed a *Reply.*[3] Also before the Court is the *Motion for Summary Judgment*[4] by Defendant, Chapman Consulting, Inc. ("Chapman"). The Plaintiff has filed an *Opposition*[5] to this motion, and Chapman likewise filed a *Reply.*[6] For the following reasons, the Court finds that both motions should be granted.

## I.      FACTUAL BACKGROUND

On March 30, 2012, Plaintiff was employed by Acadiana Production Service, Inc. ("APSI") and was performing his assigned duties on a platform in the Gulf of Mexico, Green Canyon Block 52, owned and operated by MC Offshore. MC Offshore had contracted with APSI to provide laborers to perform various services on this platform.[7] Specifically, APSI was to remove and demobilize a compressor, including the piping,

---

[1] Rec. Doc. No. 33.
[2] Rec. Doc. No. 41.
[3] Rec. Doc. No. 46.
[4] Rec. Doc. No. 31.
[5] Rec. Doc. No. 40.
[6] Rec. Doc. No. 45.
[7] Rec. Doc. No. 33-6.

channel iron, and other component parts of the old compressor, so that a new compressor could be installed.[8]  APSI employee Reed Hebert was present to supervise this job.  MC Offshore contends there were no MC Offshore employees on the platform on the date of Plaintiff's injury.[9]    Additionally, MC Offshore had contracted with Chapman Consulting, also named a defendant in this lawsuit, to provide an engineering and management consultant to supervise the work being done on the platform.[10]

While performing his duties for this job, Plaintiff sustained injuries when he fell over an allegedly improperly placed piece of channel iron on the deck.  According to MC Offshore, on the date of accident, the APSI crew was removing piping from the compressor skid when it was determined that a long tubing tray was interfering with their work.  As a result, Plaintiff and a co-worker grabbed the tubing tray and began to pull it out of the compressor area.    Plaintiff states that he was walking backwards through the demobilization area when he tripped on the channel iron and fell.[11] Specifically, Plaintiff claims that, as a result of this fall, he has suffered acute cervical and lumbar injuries along with injuries to his right shoulder/upper extremity, and these injuries will require surgery.  Plaintiff also claims that he is entitled to damages for past, present, and future mental and physical pain and suffering, past and future medical expenses, and past and future loss of income/earning capacity.

Plaintiff contends that MC Offshore and/or Chapman are liable for his damages because they failed to provide him a safe place to work; failed to exercise reasonable care in discovering and correcting the unsafe conditions on the platform; failed to warn

---

[8] Rec. Doc. No. 33-5, p. 87, p. 97.
[9] Rec. Doc. No. 33-6.
[10] *Id.* at p. 19 (attached Exhibit 2).
[11] Rec. Doc. No. 33-5, p. 146.

the Plaintiff of the dangerous and unsafe conditions of the premises; and failed to properly inspect, maintain, and repair the platform.

MC Offshore and Chapman have moved for summary judgment arguing that Plaintiff has failed to present any genuine issues of material fact that MC Offshore or Chapman owed a duty to Plaintiff or were negligent in any manner in this case. MC Offshore contends that APSI as well as any APSI subcontractors were independent contractors on the date of the accident. Moreover, MC Offshore claims it had no employees on the platform on the date in question and was not providing any work instructions or exercising any control whatsoever over Plaintiff or any other workers on the platform. Chapman also contends that it had no employees in the area of the platform where Plaintiff's injury occurred. Both Defendants assert that any channel iron on the deck would have been an open and obvious danger; thus, Plaintiff's own negligence caused his fall.

## II.  LAW AND ANLYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[13]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not

---

[12] Fed. R. Civ. P. 56(a).

[13] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

negate the elements of the nonmovant's case."[14]   If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[15]   However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[16]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[17]   All reasonable factual inferences are drawn in favor of the nonmoving party.[18]   However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[19]   "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[20]

---

[14] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (5th Cir. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).

[15] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

[16] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[17] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[18] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[19] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

[20] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).

**B. MC Offshore**

   1. Did MC Offshore Owe a Duty Under the Contract?[21]

To establish liability under Louisiana Civil Code Article 2315, Plaintiff must show that MC Offshore owed him a duty, MC Offshore breached that duty, and his harm resulted from that breach. Duty is a question of law.[22] Courts may rely on the contract terms between the parties to determine the existence and scope of the duties owed.[23]

MC Offshore contends that Plaintiff cannot satisfy his burden of showing that MC Offshore owed a duty to Plaintiff to protect him from the type of harm he suffered. MC Offshore claims that the duty to provide an employee with a safe place to work is primarily on his employer under Louisiana law. Furthermore, MC Offshore argues that it did not retain control over the activities of the independent contractors such that an exception to the general rule applies. MC Offshore points to the specific language of its contract with APSI in support of its position. The contract between MC Offshore and APSI provides the following, in pertinent part:

   4.2   Independent Contractor.   In the performance of the services hereunder, Contractor [APSI] agrees that it shall act as and be an Independent Contractor free and clear of any dominion and control by Company [MC Offshore] in the manner in which said services are to be performed, and as such Contractor [APSI]:

       (a)   acts as the employer of an employee of Contractor [APSI] by paying wages, directing activities, performing other similar functions characteristic of an employer-employee relationship;

---

[21] There is no dispute that Louisiana law governs this case because it arises under the Outer Continental Shelf Land Act ("OCSLA"), and "OCSLA adopts the law of the adjacent state (Louisiana) as surrogate federal law, to the extent that it is not inconsistent with other federal laws and regulations." *Fruge v. Parker Drilling Co.*, 665 F.3d 671, 679 (5th Cir. 2011).
[22] *Smith v. Hall-Houston Oil Co.*, No. 98-3433, 2000 WL 6265 at *2 (E.D. La. Jan. 4, 2000)(citing *Harris v. Pizza Hut*, 455 So.2d 1364, 1371 (La. 1984)).
[23] *Foster v. Sasol North America, Inc.*, No. 13-cv-2813, 2015 WL 338988 at * 2 (W.D. La. Jan. 26, 2015), citing *Dupre v. Chevron, U.S.A., Inc.*, 913 F.Supp. 473, 480 (E.D. La.1996), *aff'd*, 109 F.3d 230 (5th Cir.1997)(citing *Graham v. Amoco Oil Co.*, 21 F.3d 643, 647 (5th Cir. 1994)).

  (b) is free to determine the manner in which the work or service is performed, including the hours of labor of or method of payment to any employee;

  (c) is required to furnish or have his employees, if any, furnish necessary tools, supplies or materials to perform the work or service;

  (d) possesses the skills required for the specific work or service;[24]

     . . .

Additionally, the contract also sets forth as follows:

 3.1 <u>Contractor Safety Required.</u> Contractor [APSI] is required to perform its work under the Contract in a safe and reasonable manner. Contractor [APSI] shall seek to avoid injury, loss or damage to persons by taking reasonable steps to protect (a) employees and other persons at the site; (b) materials and equipment stored at the site or at offsite locations for use in performance of the work; and (c) all property and structures located at the site and adjacent work areas, whether or not said property or structures are part of the work or involved in the work. Contractor [APSI] shall provide sufficient supervision and training of its employees concerning all applicable safety laws, rules and regulations. Contractor [APSI] shall be solely responsible for compliance with all rules and regulations, including without limitation those promulgated by the United States Occupational Safety and Health Administration, with respect to the health and safety of Contractor's [APSI's] employees.

 4.1 <u>Contractor as Superintendent.</u> Except as set forth below, or to the extent applicable in circumstances covered by the Louisiana Workers' Compensation Act, La. R.S. 23:1021, et seq., as described in Section 4.5 below, the actual performance and superintendence of all work hereunder shall be by Contractor [APSI], but Company [MC Offshore] and its representatives shall have unlimited access to the operations to determine whether work is being performed by Contractor [APSI] in accordance with the provisions of this Contract and the applicable Purchase Order.[25]

MC Offshore contends the above language clearly shows that it retained no right to control the work being performed by APSI.  In addition, MC Offshore contends the exact same language is present in its contract with Chapman Consulting, also designating Chapman as an independent contractor over which MC Offshore exerted no

---

[24] Rec. Doc. No. 33-6, p. 8.
[25] *Id.* at pp. 7-8.

supervisory control. MC Offshore argues that, on the date of Plaintiff's injury, he admitted he did not speak to any MC Offshore employees.[26] Thus, MC Offshore could not have provided Plaintiff or the APSI crew with any instructions of any nature, much less "how to" perform their assigned work.

MC Offshore also points to Plaintiff's deposition testimony that APSI Supervisor Reed Hebert was in charge of advising the APSI crew about how to perform their duties on the platform. When asked if he agreed that how the job "was specifically done is left up to Reed and the APSI crew," Plaintiff responded, "Yes, sir."[27] APSI Supervisor Hebert acknowledged that Chapman Consulting consultant Ervin Gordon, who was present on the date of the accident, gave Plaintiff no instructions on how to perform his work. Hebert was asked: "Would it be fair to say that [Gordon] kind of acted as a liaison between MC Offshore and yourself, basically to get the instructions from MC Offshore as to what they needed done and sort of relay that to you for further handling?"[28] Hebert responded, "Yes."[29] Hebert's testimony also acknowledged that instructions regarding the details of the APSI crew's work, such as cutting pipes or removing tubing, came from him as the supervisor.[30] Plaintiff's testimony also acknowledged that the Chapman consultant provided no instructions on how to perform his duties on the date in question.[31] Thus, MC Offshore contends it is entitled to summary judgment because Plaintiff cannot satisfy his burden on his negligence claim that MC Offshore owed him a duty.

---

[26] Rec. Doc. No. 33-5, p. 23 (Deposition of J.R. Kawanski Allen, p. 195).
[27] *Id.* at pp. 9-10 (Deposition of J.R. Kawanski Allen, pp. 122-23).
[28] Rec. Doc. No. 33-7, pp. 19-20 (Deposition of Reed A. Hebert, pp. 129-130).
[29] *Id.*
[30] *Id.* at p. 20 (Deposition of Reed A. Hebert, p. 130).
[31] Rec. Doc. No. 33-5, p. 9 (Deposition of J.R. Kawanski Allen, pp. 122).

In opposition to MC Offshore's motion, Plaintiff contends there are several disputed material facts which preclude summary judgment in this case. First, Plaintiff contends that whether it was APSI's responsibility to remove the hazard on which he tripped is a disputed issue of fact. Second, Plaintiff also disputes MC Offshore's contention that no MC Offshore employee was on the platform on the date of Plaintiff's injury. Plaintiff points to the testimony of Bryan Lee, a Chapman Consulting employee, who testified about a "lead guy on the platform for MCOP [MC Offshore]."[32]

The Court finds that Plaintiff has failed to carry his burden on his negligence claim against MC Offshore. Applying the law to the facts of this case, and in light of the clear terms of the parties' contract, MC Offshore is entitled to summary judgment on this claim. Under Louisiana law, a principal is generally not liable for the conduct of an independent contractor.[33] There are exceptions where "(1) the liability arises from ultrahazardous activities performed by the contractor on behalf of the principal or (2) the principal retains operational control over the contractor's acts or expressly or impliedly authorizes those acts."[34]

It is undisputed in this case that the first exception does not apply because this case does not involve ultrazardous activity. The Fifth Circuit has stated that, "whether [a] case fits within the second exception is a more complicated question."[35] The Fifth Circuit has routinely held that: "Operational control exists only if the principal has direct supervision over the step-by-step process of accomplishing the work such that the

---

[32] Rec. Doc. No. 41-3, p. 3 (Deposition of Bryan Lee, p. 16).
[33] *Coulter v. Texaco, Inc.,* 117 F.3d 909, 911–12 (5th Cir.1997).
[34] *Id.* at 912.
[35] *Ukudi v. McMoran Oil & Gas, L.L.C.*, 587 F. App'x 119, 122 (5th Cir. Sept. 29, 2014).

contractor is not entirely free to do the work in his own way."[36]  Moreover, "absent an express or implied order to the contractor to engage in an unsafe work practice leading to an injury, a principal … cannot be liable under the operational control exception."[37] "In deciding questions of operational control, the court considers both the contract between the parties and the extent to which the principal actually exercises control."[38]

Based on the record before the Court and the binding contract between the parties, it is clear that MC Offshore lacked the type of operational control required for application of this exception.  The contract language cited above clearly places the burden of safety on APSI.  Plaintiff's proffered factual disputes are immaterial to the determination of whether MC Offshore owed a legal duty to Plaintiff.  In fact, whether an MC Offshore employee was present on the platform or not is insufficient to defeat summary judgment.  Courts have held that "the physical presence of a representative of a principal is not sufficient to show supervision or control."[39]  "Neither are periodic inspections by a principal's agent."[40]  The testimony set forth above of both Plaintiff and APSI Supervisor Hebert also undermines any argument that there is a factual dispute over who controlled and/or supervised the work being performed by the APSI crew on

---

[36] *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003)(citing *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 270 (5th Cir.1992); *McCormack v. Noble Drilling Corp.*, 608 F.2d 169, 175 n. 9 (5th Cir.1979).

[37] *Coulter*, 117 F.3d at 912 (citing *Graham*, 21 F.3d at 646; *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987)).

[38] *Ukudi*, 587 F. App'x at 122, citing *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 193 (5th Cir.1991).

[39] *Fruge*, 337 F.3d at 564; *see also Graham*, 21 F.3d at 646 (finding no operational control or implied authorization when the "'company man' merely observed [the independent contractor's] employees performing the duties for which the governing contract gave them the 'sole' responsibility"); *see also Woods v. Apache Corporation et al*, No. 11-1928, 2013 WL 5673606 (E.D. La. Oct. 17, 2013)("'The fact that a principal … reserves the right to monitor its contractor's performance and stations a "company man" on the platform who observes the contractor's activities, has the right to make safety recommendations to the contractor, and is obligated to report continuing unsafe work practices or conditions to his … superiors, does not mean that the principal controls the methods or details of the contractor's work.'")(quoting *Coulter*, 117 F.3d at 912).

[40] *Borel v. Chevron U.S.A., Inc.*, No. 09-2799, 2009 WL 8138279 at *3 (E.D. La. Nov. 19, 2009), citing *Fruge*, 337 F.3d at 564; *see also Coulter*, 117 F.3d at 912.

the date of Plaintiff's injury.  The Court finds that MC Offshore did not exercise control over the work site and cannot be held liable for the offenses of its independent contractor under the facts of this case.   Summary judgment is appropriate in favor of MC Offshore on the negligence claim.

Jurisprudence supports the Court's holding on this issue.   The Fifth Circuit affirmed a district court's decision to grant summary judgment to the principal in *Ukudi v. McMoran Oil & Gas, L.L.C.*[41]   *Ukudi* involved a subcontractor's employee who was injured while working on an offshore platform.   Ukudi sued the owner of the platform, arguing that the principal exercised sufficient operational control to trigger liability for negligence under Louisiana law.   The contract between the parties provided that the principal would exercise no control over the subcontractor's personnel or the methods or means employed by the subcontractor in the performance of the work.[42]   However, Ukudi presented evidence that a principal's employee had prohibited the plaintiff's crew from using certain equipment and gave other salient instructions to the work being performed.   The Fifth Circuit affirmed the district court's decision to grant summary judgment in favor of the principal, holding as follows:

> This degree of involvement does not rise to the level of operational control. Although the parties have not identified any cases in which a principal told a contractor not to use one method for safety reasons but provided no further directions, this behavior is closer to the periodic inspections at issue in *Williams v. Gervais F. Favrot Co.*, 499 So.2d 623, 626 (La.App. 4th Cir.1986), *writ denied*, 503 So.2d 19 (La.1987), than to "direct supervision over the step-by-step process," *Fruge,* 337 F.3d at 564, or "an express or implied order to the contractor," *Coulter*, 117 F.3d at 912. The fact that Louisiana courts have previously emphasized the language of the contract over the extent to which the principal actually

---

[41] *See* note 35, *supra.*
[42] *Ukudi*, 587 F. App'x at 122.

exercised control supports this conclusion. *See Hemphill v. State Farm Ins. Co.*, 472 So.2d 320, 322 (La.App. 3d Cir.1985). In short, the district court was correct in granting summary judgment on the vicarious-liability claims.[43]

The district court in *Alexander v. Broadmoor LLC, et al*[44] reached the same conclusion under similar factual circumstances. Alexander was injured when he tripped while unloading and transporting duct on the property of the principal in performance of duties relating to a contract to install an HVAC system in the offshore living module on the principal's property. The district court for the Eastern District of Louisiana granted summary judgment in favor of the principal for several reasons. First, the court found that "[n]o where in the contract does Defendant reserve the right to direct any part of the work performed by the sub-contractors on its property."[45] The court also found that the presence of defendant's employees on the work site did not demonstrate control over the premises, relying on *Fruge*.[46] The court stated: "this minimal activity by Defendant's representatives is not enough to make a demonstration of Defendant's control over the work space."[47]

Accordingly, Plaintiff has failed to present summary judgment evidence that material facts are in dispute on this issue, and MC Offshore is entitled to summary judgment on the Article 2315 negligence claim.

2. Custodial Liability under Louisiana Civil Code Article 2317.1

Plaintiff also claims that MC Offshore is liable under Louisiana Civil Code Article 2317.1, which provides as follows:

---

[43] *Id.* at 123.
[44] No. 04-3326, 2006 WL 2088287 (E.D. La. July 24, 2006).
[45] *Id.* at *2.
[46] *Id.* at *3, citing *Fruge*, 337 F.3d at 564.
[47] *Id.*

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of *res ipsa loquitur* in an appropriate case.[48]

Under this article, Plaintiff contends that MC Offshore is liable for the unsafe conditions of the platform. To prevail on a custodial liability claim, a plaintiff must demonstrate: "(1) the object was in the defendant's custody; (2) the thing contained a vice or defect which presented an unreasonable risk of harm to others; (3) the defective condition caused the damage; and (4) the defendant knew or should have known of the defect."[49] MC Offshore moves for summary judgment on this claim primarily because it contends Plaintiff has failed to establish that the channel iron presented an unreasonable risk of harm, and Plaintiff has failed to present summary judgment evidence that MC Offshore knew or should have known of this "defect." The Court will address each argument in turn.

### a. Unreasonable Risk of Harm

"For a defect to create an unreasonable risk of harm, 'the defect must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances.'"[50]

---

[48] Article 2317.1 modifies Article 2317 by removing strict liability and imposing liability on an owner or custodian of an object only if the object causes damage "occasioned by its ruin, vice, or defect, only upon showing that [the owner] knew of the ruin, vice, or defect ..., that the damage could have been prevented by the exercise of reasonable care, and [the owner] had failed to exercise such reasonable care." *Venezia v. ConocoPhillips Co.*, 2014 WL 107962 at *10 (E.D. La. Jan. 9, 2014)(citing La. Civ.Code art. 2317.1 (1996); *Reaux,* 840 So.2d at 24).

[49] *Cormier v. Dolgencorp, Inc.*, 136 Fed. Appx. 627, 627–28 (5th Cir. 2005) (citing La. C.C. arts. 2317 and 2317.1).
[50] *Price v. Roadhouse Grill, Inc.*, 512 F.Supp.2d 511, 516 (W.D. La. 2007), quoting *Durmon v. Billings*, 38,514 (La.App. 2 Cir. 5/12/04), 873 So.2d 872, 876.

Applying Louisiana law, courts have generally held that the simple fact that an accident occurred as a result of an alleged defect does not alone "elevate the condition of the thing to that of an unreasonably dangerous condition."[51] Courts are to consider not only the past accident history of the defect in question, but also "the degree to which a danger may be observed by a potential victim."[52] "If the 'risk of harm is obvious, universally known and easily avoidable, the risk is not unreasonable.'"[53] Moreover, "the unreasonable risk of harm criterion cannot be applied mechanically."[54] Instead, the court "must balance the claims and interests, weigh the risks and the gravity of harm, and consider the individual and societal rights and obligations. The court must balance the probability and magnitude of the risk against the utility of the thing."[55]

MC Offshore contends that the material facts on this issue are undisputed. MC Offshore cites Plaintiff's testimony that the channel iron was a different color than the deck, and that, if he looked down, he could see the yellow channel iron on the gray deck.[56] When asked if Plaintiff had looked down, would he have seen the channel iron, he testified: "Yeah. Yeah, if I would had [sic] looked down, I would have seen it."[57] Plaintiff was asked if the yellow channel iron was obvious, to which he responded: "Yeah."[58] MC Offshore argues Plaintiff's own testimony shows that there is no disputed fact that the channel iron was open and obvious. Moreover, MC Offshore avers that the

---

[51] *Durmon*, 873 So.2d at 877.

[52] *Id.*

[53] *Price*, 512 F.Supp.2d at 516, quoting *Durmon*, 873 So.2d at 877; *see also Manchack*, 621 So.2d at 654 (stating that "evidence of the absence of other accidents at the same place is relevant and admissible as tending to show that the place was not dangerous and that the defendant did not have actual or constructive knowledge of a dangerous condition.").

[54] *Id.*, citing *Limberg v. Winn Dixie Louisiana, Inc.*, 622 So.2d 1178, 1179 (La.App. 4 Cir. 1993).

[55] *Limberg*, 622 So.2d at 1179.

[56] Rec. Doc. No. 33-5, p. 12 (Deposition of J.R. Kawanski Allen, p. 128).

[57] *Id.* at p. 18 (Deposition of J.R. Kawanski Allen, p. 174, lines 5-6).

[58] *Id.* (Deposition of J.R. Kawanski Allen, p. 174, lines 9-10).

removal of the channel iron was within the scope of the work tasked to the ASPI crew; thus, the presence of pieces of channel iron on this type of job was not uncommon or unanticipated.

In opposition to this argument, Plaintiff curiously attempts to discredit his own sworn testimony in an effort to offer disputed facts. Plaintiff contends that the statement "Plaintiff testified that the yellow channel iron was obvious against the gray platform and, had he looked down, he would have seen the channel iron" is "strongly disputed by the plaintiff in the testimony of various witnesses, by documents, or were obtained from witnesses whose credibility on such issues is questionable and should not support summary judgment, since credibility should not be determined on the present motion."[59] Plaintiff then challenges the testimony that the conduit and channel iron were flagged, relying on testimony by APSI Supervisor Hebert that he had asked someone to flag the channel iron as a hazard.[60] Plaintiff contends the fact that Hebert requested the channel iron be flagged as a hazard is a credibility determination improper on summary judgment. Plaintiff also argues that the fact that the channel iron was painted yellow does not render it "open and obvious" because: (1) if such objects were so obvious they would not need to be flagged, and (2) many items on the platform are painted yellow such that the channel iron did not stand out in the manner MC Offshore claims. Finally, Plaintiff contends that whether a defect is "open and obvious" is a mixed question of law and fact, as held by many courts, including this Court, thereby precluding summary judgment.

---

[59] Rec. Doc. No. 41, p. 3.
[60] *Id.* at p. 4, citing Rec. Doc. No. 41-2, pp. 7-9 (Deposition of Reed A. Hebert, pp. 89-92).

Notwithstanding the fact that the Plaintiff has not presented any evidence that the channel iron was a vice or defect of the platform itself,[61] the Court finds that the channel iron was open and obvious by virtue of Plaintiff's sworn testimony. Despite Plaintiff's protestations, his testimony was directly quoted above, and he admitted that he would have seen the channel iron had he looked down. The dispute over the flagging or tagging of the channel iron does not create a disputed issue of material fact. To be clear, the Court acknowledges that it has recently held[62] that whether a defect is open and obvious is generally a mixed question of law and fact and properly left to a jury; however, in the case cited by Plaintiff, the issue was actually disputed. Plaintiff's sworn testimony in this matter establishes that no factual dispute exists for a jury on this particular issue.

Plaintiff's contention that there is a factual dispute regarding whether it was APSI's responsibility alone to remove the channel iron is likewise undermined by Plaintiff's own testimony. Plaintiff was asked: "So part of what APSI was hired to do is to remove the channel iron and take it off the deck?" Plaintiff's response was: "Yeah. Move all the old and come back all with new."[63] When asked repeatedly if cutting the channel iron was in the scope of APSI's work, Plaintiff responded in the affirmative every time.[64] Regardless of the fact that addressing the channel iron may have been a shared responsibility among APSI and other parties, it was clearly acknowledged by Plaintiff as falling within the scope of APSI's duties on this particular job.

---

[61] "A defect is some flaw or fault or condition of relative permanence existing or inherent in the thing itself as one of its qualities" and which poses "an unreasonable risk of harm." *McBride v. Cracker Barrel Stores, Inc.*, 649 So.2d 465, 467 (La. Ct. App.1994). There is no evidence that the channel iron is inherent to the platform itself.

[62] *See Farrow v. Dolgencorp. LLC*, No. 12-804, 2014 WL 1118122 (M.D. La. Mar. 20, 2014).

[63] Rec. Doc. No. 33-5, p. 14 (Deposition of J.R. Kawanski Allen, p. 142, lines 1-5).

[64] *Id.* at p. 24 (Deposition of J.R. Kawanski Allen, pp. 195-96).

Applicable jurisprudence supports the Court's finding on this issue.  In *George v. Nabors Offshore Corporation*,[65] the Fifth Circuit affirmed the district court's grant of summary judgment to the platform owner and the company hired by the platform owner to conduct drilling operations.   The plaintiff was a welder and part of a welding crew contracted to remove a bullfrog crane from an offshore platform located off the coast of Louisiana.   The plaintiff had eighteen years of experience performing such work and had regularly been involved in the removal of cranes and rigs from platforms.[66]   The plaintiff was injured when he tripped over hoses stacked upon the platform's deck while in the course of his duties, and he sued both the platform owner and drilling company for his injuries.   The district court granted summary judgment in favor of the defendants, and the Fifth Circuit affirmed, holding as follows:

> As the district court correctly determined, any reasonable person walking over the hoses would have realized their potential danger. George, with eighteen years of experience on offshore platforms, admitted in his deposition that he saw the hoses, knew they posed a possible danger, and knew that he had to cross them with caution.  The danger posed by heavy coiled hoses piled six to eight inches deep is "obvious to all," *Dauzat*, 995 So.2d at 1186, and was particularly obvious to George considering his considerable offshore platform experience.  *See Walker v. Union Oil Mill, Inc.*, 369 So.2d 1043, 1047 (La.1979) ("[I]n considering a defendant's duty to a particular person, consideration should be given to the person's age, maturity, experience, familiarity with the premises and its dangers, and other such factors which might increase or decrease the risk of harm to that person.").[67]
>
> .   .   .
>
> Louisiana's rule is clear: landowners have no duty where the condition "should have been observed by the individual in the exercise of reasonable care," or was "as obvious to a visitor as it was to the landowner." *Dauzat*, 995 So.2d at 1186.  The undisputed evidence shows that George observed the coiled hoses and appreciated the danger they posed.  We therefore agree with the district court that the coiled hoses

---

[65] 464 F. App'x 298 (5th Cir. 2012).
[66] *Id.* at 299.
[67] *Id.* at 300-01.

were so open and obvious that they did not, as a matter of law, constitute an unreasonably dangerous condition; accordingly, Nabors did not owe George a duty to warn or cure the danger posed by the hoses. *See id.* at 1186–87.[68]

Also relevant is the decision in *Duffy v. Conoco, Inc.*,[69] relied upon by MC offshore in support of its motion for summary judgment. *Duffy* involved a plaintiff employed by an independent contractor hired to cut drive pipe to be used in installing a wellhead.[70] With respect to the plaintiff's claim under Article 2317.1, the court found that the slot in the platform into which the plaintiff slipped did not constitute an unreasonable risk of harm.[71] Of particular note, the court found that, although "Duffy was not hired to fix the alleged defect," "he was hired with the understanding that the slot was a necessary part of the job."[72] Similarly, in the present case, the Court finds that, not only did Plaintiff acknowledge that that yellow channel iron was open and obvious on the deck, he also acknowledged that removing old channel iron was within the scope of APSI's work on the platform.

   b. Knowledge of the Defect

MC Offshore also contends that Plaintiff has failed to carry his burden of showing that MC Offshore knew, or through the exercise of reasonable care should have known, of the alleged defect. MC Offshore claims that Plaintiff has failed to present evidence of any prior incidents involving the channel iron that would have put MC Offshore on actual or constructive notice of such a hazard. Thus, because Plaintiff has failed to present summary judgment evidence on another required element, MC Offshore maintains that it is entitled to summary judgment on Plaintiff's article 2317.1 claim.

---

[68] *Id.* at 301.
[69] No. 95-0600, 1996 WL 271635 (E.D. La. May 21, 1996).
[70] *Id.* at
[71] *Id.* at *5.
[72] *Id.*

Plaintiff opposes MC Offshore's arguments on this element stating that there is no evidence that there were no MC Offshore employees present on the platform on the date in question. Plaintiff also argues that, although he cannot show actual notice in this case on the current record, there is sufficient evidence of constructive notice based on APSI Supervisor Hebert's testimony that the hazard was already on the platform when the APSI crew arrived.

The Court finds Plaintiff's arguments on this element to be meritless. First, Plaintiff erroneously shifts the burden onto MC Offshore, stating that it "has not put forward any evidence that it exercised any care to discover and correct the hazard which caused plaintiff's accident and injury…"[73] As MC Offshore correctly points out, it is not a defendant's burden to come forward with any evidence. The burden is on the Plaintiff to satisfy all of the elements required by Article 2317.1.

Further, contrary to Plaintiff's assertion, MC Offshore did provide summary judgment evidence showing that there were no MC Offshore employees present on the platform on the date of Plaintiff's injury. The *Affidavit* of Ashu Vashisht, President of MC Offshore Petroleum, LLC since 2007, attests to the fact that MC Offshore did not have any employees on the Green Canyon 52 platform on the date in question.[74] The Court also finds Plaintiff's reliance on the testimony of Chapman Consulting employee Bryan Lee to be misplaced. Lee testified that, if he wanted an APSI employee fired, he would have to "coordinate that through the lead guy on the platform for MCOP."[75] Lee referred to this person as "the platform PIC or person in charge."[76] The Court agrees with MC

---

[73] Rec. Doc. No. 41, p. 11.
[74] Rec. Doc. No. 33-6 (*Affidavit* of Ashu Vashisht).
[75] Rec. Doc. No. 41-3, p. 3 (Deposition of Bryan Lee, p. 16, lines 22-23).
[76] *Id.* at p. 4 (Deposition of Bryan Lee, p. 17, lines 5-6).

Offshore that this statement does not indicate that an MC Offshore "lead guy" or "person in charge" was always physically present on the platform at issue. As such, the Court finds that Plaintiff has also failed to carry his burden on this element,[77] and MC Offshore is entitled to summary judgment as a matter of law on the Article 2317.1 claim.

### C. Chapman Consulting

Plaintiff originally only brought suit against MC Offshore; however, Plaintiff later filed an *Amended Complaint*[78] to name Chapman as a defendant under the same negligence theories brought against MC Offshore. In large part, the reasoning set forth above with respect to MC Offshore applies with equal force to the claims against Chapman. However, unlike MC Offshore, Chapman and APSI were not contractually obligated to each other. Rather, Chapman was hired as an independent contractor by MC Offshore to ensure that the APSI crew met the requirements and specifications of the work which APSI was hired to complete.[79] To the extent that Plaintiff claims that Chapman voluntarily assumed the legal duty to provide a safe work place for the APSI crew, the Court will review the facts and applicable law pertaining to that argument. However, Plaintiff's claims under Article 2317.1 are clearly foreclosed against Chapman for the same reasons set forth above, and, more specifically, because Chapman is not the owner of the property containing the alleged defect.

Plaintiff contends there are material facts in dispute regarding Chapman's exercise of supervisory control over the APSI crew's work on the platform. Bryan Lee, an employee of Chapman Consulting acting as general manager for the work being

---

[77] The Court notes that, even if it found that a fact issue existed with respect to constructive knowledge, Plaintiff would still fail on this claim for failing to present evidence that the alleged defect presented an unreasonable risk of harm as discussed previously.
[78] Rec. Doc. No. 12.
[79] Rec. Doc. No. 31-4.

performed by Chapman on the Green Canyon 52 platform, declared under penalty of perjury that: "Chapman Consulting, Inc. had only one employee, Ervin (J.R.) Gordon onboard the Green Canyon 52 platform on or about March 30, 2012. Gordon was an inspector for Chapman Consulting whose role was to ensure that the Acadiana Production Services, Inc. ("APSI") crew met the requirements and specifications of the work which APSI was hired by MC Offshore to complete."[80] Plaintiff claims this statement is "an overgeneralization" of the work Chapman performed.[81] Plaintiff cites the testimony of APSI Supervisor Hebert that Gordon "was the company man out there supervising jobs," and that "[h]e was in charge, in charge of the project, make sure everything got done as to scope of work and also safety."[82] Plaintiff acknowledges that, in his deposition, Chapman employee Bryan Lee contradicted Hebert's testimony, testifying that Chapman's job was not safety but rather "to make sure that the construction work is being performed according to the specifications."[83] Plaintiff contends this factual dispute precludes Chapman's summary judgment. Plaintiff also points to testimony that Gordon attended safety meetings with APSI every morning when Job Safety Analyses ("JSA") are discussed.[84] Lee also testified that part of Gordon's job was to review the JSAs and to discuss ways to "fix" potential hazards with APSI's supervisor.[85] Finally, Plaintiff references an "Inspection and Cost Tracking Report" which Chapman provided daily to MC Offshore that contained an area available to report "Problematic Personnel." For these reasons, Plaintiff contends there are

---

[80] Rec. Doc. No. 31-4, pp. 1-2 (Unsworn Declaration Pursuant to 28 U.S.C. § 1746).
[81] Rec. Doc. No. 40, p. 9.
[82] Rec. Doc. No. 40-2, p.3 (Deposition of Reed A. Hebert, p. 46, lines 9-10, 12-14).
[83] Rec. Doc. No. 40-5, p. 16 (Deposition of Bryan Lee, p. 32, lines 20-23).
[84] *Id.* at 9-10 (Deposition of Bryan Lee, pp. 25-26).
[85] *Id.* at p. 16 (Deposition of Bryan Lee, p. 32, line 12).

material issues of fact in dispute regarding the level of operational control exercised by Chapman over the APSI crew, and regarding whether Chapman voluntarily assumed a duty for the safety of personnel on this project and subsequently breached that duty.

Viewing the evidence in the light most favorable to Plaintiff, the law is clear that Chapman is entitled to summary judgment on this issue. The Fifth Circuit has held that "operational control only arises if the principal 'exercises direct supervision over the step-by-step process of accomplishing the work.'"[86] Further, "[d]irect step-by-step supervision refers to the case where the principal substitutes the independent contractor's entire method and manner of operation for one of its own."[87] It is without question that a principal may specify "that which an independent contractor is to accomplish,"[88] and may monitor work progress.[89] As such, "the giving of specifications and demand that certain standards be met is insufficient to hold that a principal has retained the right to exercise control."[90]

In *Carroll v. Mobil Oil Corp.*,[91] the court determined that warning an independent contractor's employees of a safety hazard is not a basis for imposing liability on the principal when the duty to provide a safe workplace is contractually assigned to the contractor. "To find otherwise would discourage 'company men' who notice potential safety hazards from pointing them out to the independent contractor and his employees."[92] The fact that Chapman could, and did, point out safety problems to APSI did not render Chapman in control of APSI's safety and does not establish any step-by-

---

[86] *Grammer v. Patterson Servs., Inc.*, 860 F.2d 639, 643 (5 th Cir. 1988)(quoting *Guillory v. Conoco, Inc.* (521 So.2d 1220, 1223 (La. Ct. App. 3d Cir. 1988)).
[87] *Haynie v. Dynamic Offshore Contractors, Inc.*, 1991 WL 33615 at * 4 (E.D. La. Mar. 7, 1991).
[88] *Grammer*, 860 F.2d at 645.
[89] *See Guillory*, 521 So.2d at 1223.
[90] *Haynie*, at *4.
[91] No. 94-0158, 1994 WL 665781 (E.D. La. Nov. 29, 2994).
[92] *Id.* at *4.

step supervision but rather indicates a monitoring of APSI's work in accordance with the terms of the contract between Chapman and MC Offshore.

Federal district courts in Louisiana routinely apply the Fifth Circuit's holding in *LeJeune v. Shell Oil Company*,[93] which made clear that even a "comprehensive" safety inspection program will not result in a finding of operational control over the contractor's work when the terms of the contract unambiguously indicate that safety is the ultimate responsibility of the contractor.[94] The general rule remains:

> [T]he fact that a principal ... reserves the right to monitor its contractor's performance and stations a "company man" on the platform who observes the contractor's activities, has the right to make safety recommendations to the contractor, and is obligated to report continuing unsafe work practices or conditions to his superiors, does not mean that the principal controls the methods or details of the contractor's work. [95]

Moreover, courts have acknowledged that:

> To create a duty based on plaintiff's claim that [a contracted safety consultant] "examin[ed] its contractor's work place, procedures and equipment for safety concerns" would amount to an end-run around a large body of Fifth Circuit precedent finding no "operational control" despite some knowledge of risk or involvement with safety issues and the presence of "company men" on the contractor's rig.[96]

Thus, the fact that part of Chapman's job duties may have included ensuring that APSI complied with safety procedures does not mean that Chapman voluntarily assumed responsibility for the APSI crew's safety or wielded operational control over the step-by-step manner and method in which APSI carried out its work. The testimony of APSI Supervisor Hebert confirms this:

---

[93] 950 F.2d 267 (5th Cir. 1992).
[94] *Id.* at 269-70; *Dupre*, 913 F. Supp. at 473.
[95] *Venezia*, 2014 WL 107962 at *9 (quoting *Coulter*, 117 F.3d at 912).
[96] *Id.* at *9, quoting *Dupre*, 913 F.Supp. at 483; *accord In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, 808 F.Supp.2d 943, 963 (E.D.La. 2011).

Q: And you had mentioned something about safety too. What exactly did you mean when you said he had some role in safety?

A: Well, as a company man, it's like teamwork between JR Gordon and me. It's like we're a team. We work together. He has like a responsibility to make sure everything is safely done. And my job is to monitor that while he's doing his paperwork or reports in the morningtime, whatever. It's my responsibility to hold that safety down.

Q: So you're more – I guess is he more the safety guy from a perspective of like maybe when you meet in the morning, he's there to facilitate discussions or be present for discussions of safety?

A: Yes.

Q: But once you actually get in your area, you're the one who's looking out for your crew?

A: Yes.

Q: He's not in that area, in your flagged-off area?

A: Right.

Q: Would it be fair to say that JR kind of acted as a liaison between MC Offshore and yourself, basically to get the instructions from MC Offshore as to what they needed done and sort of relay that to you for further handling?

A: Yes.

Q: In other words, he would tell you, Reed, this is what MC Offshore needs done. And you say, all right, I'll take these instructions and let my crew know what they need to do?

A: Correct.

Q: JR didn't tell them, you need to cut this pipe or you need to remove this tubing, anything like that?

A: No.

Q: Those type of instructions were – came from you as the supervisor?

A: Yes.

Q: Or whoever was the supervisor on any APSI project?

A: Yes.[97]

Hebert's testimony comports with the contractual language of the MC Offshore/APSI contract set forth above noting APSI's responsibility "to perform its work under the Contract in a safe and reasonable manner," "to avoid injury, loss or damage to persons by taking reasonable steps to protect … employees and other persons at the

---

[97] Rec. Doc. No. 33-7, pp. 19-20 (Deposition of Reed A. Hebert, p. 129, lines1-25 through p. 130, lines 1-24).

site…"[98]  To hold Chapman or MC Offshore responsible for the safety of APSI's crew would circumvent the clear terms of the contract.

Gordon's participation in safety meetings is likewise insufficient to find liability. The *Carroll* court also addressed this issue. [99]  In *Carroll*, Mobil contracted with Seawolf to install production facilities on one of its platforms.  The written contract between the parties contained similar language to the MC Offshore/APSI contract.  A Seawolf employee was injured while he was performing welding duties associated with this job.[100]  The plaintiff sued Mobil and argued that it exercised operational control by inspecting Seawolf's operations to monitor compliance with safety provisions.  The plaintiff's claim was based on the fact that a Mobil employee, "company man" Coleman Dupre, was involved in the daily safety meetings and advised Seawolf's employees to be aware of potential hazards.  The court held that "[t]his involvement does not constitute implied authorization of Seawolf's employee's negligent acts."[101]  Specifically, the court held:

> In the instant case, Dupre merely assisted at safety meetings and warned Seawolf's employees about the condensation dripping from the production line. Such actions are insufficient to constitute an assumption of the duty to provide a safe workplace which was contractually assigned to Seawolf. To find otherwise would discourage "company men" who notice potential safety hazards from pointing them out to the independent contractor and his employees. Furthermore, the contract provided that Mobil could inspect Seawolf's procedures for compliance with safety requirements, but that did not diminish the duty owed by Seawolf.[102]

Although Gordon is a Chapman employee, to the extent he acted as MC Offshore's "company man," the reasoning of *Carroll* applies with equal force to the facts

---

[98] Rec. Doc. No. 33-6, pp. 7-8, Section 3.1 of Contract.
[99] *Carroll*, 1994 WL 665781.
[100] *Id.* at *1.
[101] *Id.* at *3.
[102] *Id.* at *4.

of this case.  Neither MC Offshore nor Chapman assumed responsibility for the safety of APSI's crew by virtue of attending safety meetings and ensuring compliance with the job specifications.  That responsibility was clearly the contractual obligation of APSI alone. Thus, Chapman Consulting is entitled to summary judgment on all claims brought by Plaintiff.  Because the claims against Chapman are dismissed, the Court will GRANT APSI's *Motion for Summary Judgment to Dismiss Third Party Complaint*.[103]

## III.    CONCLUSION

For the reasons set forth above, MC Offshore's *Motion for Summary Judgment*[104] is GRANTED; Chapman Consulting's *Motion for Summary Judgment*[105] is GRANTED; and APSI's *Motion for Summary Judgment to Dismiss Third Party Complaint*[106] is GRANTED.  Plaintiff's claims are dismissed with prejudice.

*Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on <u>April 17, 2015</u>.


*Shelly D. Dick*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[103] Rec. Doc. No. 32.  The Court notes that it is only granting this motion as a result of Chapman's dismissal from this lawsuit.  Had Chapman remained in this lawsuit, the Court would have denied APSI's motion on the finding that the Louisiana Oilfield Indemnification Act ("LOIA") does not apply to this case under the test set forth by the Fifth Circuit in *Transcontinental Gas Pipeline Corp. v. Transportation Insurance Co.*, 953 F.2d 985 (5th Cir. 1992).
[104] Rec. Doc. No. 33.
[105] Rec. Doc. No. 31.
[106] Rec. Doc. No. 32.